UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CARRIGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-cv-03208 |
| | § | |
| M/V AMC AMBASSADOR, INC., et al. | § | |
| | § | |
| Defendants. | § | JURY DEMANDED |

## JOINT MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND OF EPL OIL & GAS, INC. AND CROSS GROUP, INC.

NOW INTO COURT, through undersigned counsel, come EPL Oil & Gas, Inc. ("EPL") and Cross Group, Inc. and submit this Memorandum in Opposition to the Motion for Remand filed by Plaintiff Michael Carrigan ("Carrigan"). Carrigan's Motion for Remand [Doc. No. 8] should be denied for two reasons: (1) Carrigan's general maritime law claims are removable pursuant to the recent amendment to the removal statute and the "saving to suitors" clause is not an Act of Congress that prohibits removal of cases under the general maritime law; and (2) Carrigan has not properly asserted any Jones Act claims because Carrigan has not sued his employer in this lawsuit.

Respectfully submitted,
**KEAN MILLER, LLP**
/s/ Zoe W. Vermeulen
**JAMES SILVERSTEIN (Texas Bar # 18357650)
KAREN W. SHIPMAN (Admitted Pro Hac Vice –
La. Bar # 27320)
ZOE W. VERMEULEN (Admitted Pro Hac Vice –
La. Bar # 34804)**
909 Poydras Street, Suite 3600
New Orleans, Louisiana 70112
Telephone: 504.585.3050
Facsimile : 504.585.3051
**Attorneys for Defendant, EPL Oil & Gas, Inc.**

/s/Michael Hogue

**CRAIN CUBBAGE HEALY & WILSON, PLLC**
**MICHAEL HOGUE (Texas Bar # 09809800)**
**SUSAN NOE WILSON (Texas Bar # 15055025)**
1177 West Loop South, Suite 1300
Houston, TX 77027
Telephone: (713) 375-2450
Facsimile: (713) 375-2499
MHogue@craincubbagehealy.com
**Counsel for Cross Group, Inc.**

ii

# TABLE OF CONTENTS

**PAGE**

I.     NATURE AND STAGE OF THE PROCEEDING     1

II.    STATEMENT OF THE ISSUES AND SUMMARY OF     2
THE ARGUMENT

III.   FACTUAL BACKGROUND     3

IV.   LAW AND ARGUMENT     6

    A.    CARRIGAN'S CLAIMS UNDER THE GENERAL     6
          MARITIME LAW ARE REMOVABLE

        (1)   The 2011 Amendment to the Removal Statute     7
             Made Claims Under the General Maritime
             Law Removable

        (2)   The Saving to Suitors Clause is Not an Act of     8
             Congress that Prohibits Removal of General
             Maritime Law Claims

            a.    The *Ryan* Court considered whether the     9
                  saving to suitors clause prohibits removal

            b.    This Court's ruling in *Ryan* is not an outlier     11
                  as Carrigan claims, rather, it has been relied
                  upon by multiple cases since its issuance

            c.    The saving to suitors clause does not     11
                  guarantee  plaintiffs the right to a
                  nonfederal forum

            d.    *Barker* did not consider or rule on the     12
                  effect of amended § 1441 on removal of
                  general maritime law claims

            e.    Section 1441 requires an Act of Congress     12
                  prohibiting removal to be express and the
                  plain language of the saving to suitors clause
                  does not expressly prohibit removal

            f.    Carrigan's Right to a Jury Trial Need     13
                  Not be Abrogated by Removal

4159440_1.DOCX

**B.**     **CARRIGAN HAS NOT PROPERLY ASSERTED**     **14**
                 **JONES ACT CLAIMS**

       **(1)**     **EMAS Is Not and Was Not Carrigan's Employer**     **15**

       **(2)**     **Gallatin Is Not and Was Not Carrigan's Employer**     **16**

       **(3)**     **EMAS and Aker Are Not Related Entities**     **16**

       **(4)**     **The Fact that EMAS and/or Gallatin Could**     **17**
                **be Jones Act Employers of Their Own**
                **Employees Does Not Mean Either is**
                **Carrigan's Jones Act Employer**

       **(5)**     **Discovery Responses Establish That Carrigan is**     **18**
                **Employed by Aker**

**V.**    **CONCLUSION**     **18**

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Addison v. Gulf Coast Contracting Servs., Inc.*,                14
744 F.2d 494, 498 (5th Cir. 1984)

*Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013)      9, 11, 12

*Bridges v. Phillips 66 Co.*, 2013 WL 6092803 (M.D. La. 2013)        11

*Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790-91 (1949)   14

*In re Dutile*, 935 F.2d 61 (5th Cir. 1991)                9

*Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963)            13

*Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980)   2, 14

*Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011)            13

*Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244-45 (5th Cir. 1988)   15

*Morris v. T E Marine Corp*, 344 F.3d 439, 444 (5th Cir. 2003)       12

*Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063 (5th Cir. 1981)       11

*Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959)       9

*Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)            14

*Ryan v. Hercules Offshore, Inc.*, 2013 WL 1967315           2, 6, 7, 9, 10, 12
(S.D. Tex. Houston Div. 2013)

*Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975)       14

*Tenn. Gas Pipeline*, 87 F.3d 150 (5th Cir. 1996)             9, 11

*Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322           2, 7
(S.D. Tex. Houston Div. 2013)

4159440_1.DOCX

**STATUTES**

28 U.S.C. § 1333                                              8

28 U.S.C. § 1333(1)                                          10, 13

28 U.S.C. § 1441                                             2, 6, 7, 8, 18

28 U.S.C § 1441(a)                                          2, 12

28 U.S.C. § 1441(b)                                         8

28 U.S.C. § 1445(a)                                         13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL CARRIGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-cv-03208 |
| | § | |
| M/V AMC AMBASSADOR, INC., et al. | § | |
| | § | |
| Defendants. | § | JURY DEMANDED |

## JOINT MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND OF EPL OIL & GAS, INC. AND CROSS GROUP, INC.

EPL Oil & Gas, Inc. ("EPL") and Cross Group, Inc. submit this Memorandum in Opposition to the Motion for Remand filed by Plaintiff Michael Carrigan ("Carrigan"). Carrigan's Motion for Remand [Doc. No. 8] should be denied for two reasons: (1) Carrigan's general maritime law claims are removable pursuant to the recent amendment to the removal statute and the "saving to suitors" clause is not an Act of Congress that prohibits removal of cases under the general maritime law; and (2) Carrigan has not properly asserted any Jones Act claims because Carrigan has not sued his employer in this lawsuit.

## I.     NATURE AND STAGE OF THE PROCEEDING

On June 17, 2013, Carrigan filed suit in the 215th Judicial District Court for Harris County Texas asserting claims for injuries allegedly sustained while Carrigan was performing services aboard a vessel as a subsea electrician on or about April 23, 2013. Carrigan's original Petition named EMAS-AMC, Inc. ("EMAS"), the M/V AMC AMBASSADOR (the "Vessel") and Cross Group, Inc. ("Cross") as Defendants. Both EMAS and Cross were served with the Petition. The Vessel has not been served. Carrigan then filed First and Second Amended Petitions on September 16, 2013 and September 30, 2013, respectively, which added Gallatin

1

Marine Management, LLC ("Gallatin") and EPL as defendants. EPL was served with the Amended Petitions on October 2, 2013. On October 31, 2013, EPL timely filed a Notice of Removal with this Court [Doc. No. 1]. Carrigan moved to remand this case, arguing that (1) Carrigan has made Jones Act claims against his employer, alleged by him to be EMAS and/or Gallatin, which are not removable and (2) under the "saving to suitors" clause, admiralty jurisdiction does not provide a basis for removal.

EPL now submits this Opposition to Carrigan's Motion for Remand because (1) Carrigan's general maritime law claims are removable pursuant to the recent amendment to the removal statute and the "saving to suitors" clause is not an Act of Congress that prohibits removal of cases under the general maritime law; and (2) Carrigan has not properly asserted any Jones Act claims because Carrigan has not sued his employer in this lawsuit.

## II.    STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

First, Carrigan's general maritime law claims are removable pursuant to 28 U.S.C § 1441, which permits removal of all claims over which the federal district courts have original jurisdiction, unless an Act of Congress expressly prohibits removal. 28 U.S.C § 1441(a). This Court has recently held that general maritime law claims are removable based on a 2011 amendment to 28 U.S.C § 1441. *Ryan v. Hercules Offshore, Inc.*, 2013 WL 1967315 (S.D. Tex. Houston Div. 2013) and *Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322 (S.D. Tex. Houston Div. 2013). Therefore, because Carrigan's claims under the general maritime law are removable, this Court should deny Carrigan's Motion for Remand.

Second, Carrigan has not asserted Jones Act claims as he has not sued his employer. It is well settled that an employer-employee relationship is essential to the existence of Jones Act claims. *See Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980). Neither EMAS

2

nor Gallatin are Carrigan's Jones Act employers, as further explained below. Because Carrigan has not sued his employer, he has not asserted Jones Act claims and, therefore, his Motion for Remand should be denied in this regard as well.

Therefore, EPL requests that this Court deny Carrigan's Motion for Remand.

## III.   **FACTUAL BACKGROUND**

Carrigan's Original and Amended Petitions state that EMAS and Gallatin are Carrigan's Jones Act employers and Carrigan states same again with regard to EMAS in his Motion to Remand.[1]   Carrigan has not, however, supported any of these statements as to his employment with evidence or sworn testimony.   To the contrary, the attached testimony via unsworn declaration establishes that Carrigan is not now and was not at any relevant time an employee of EMAS or Gallatin.[2]

Specifically, the Unsworn Declaration of EMAS's Human Resources Senior Manager Brett Swinden, attached as Exhibit "A", establishes that Carrigan is not and has never been employed by EMAS and further that EMAS is not and was not Carrigan's borrowing employer as (1) EMAS did not have the authority to control or assign Carrigan to different projects; (2) EMAS did not dictate Carrigan's work assignments and/or schedule; (3) EMAS did not pay Carrigan's wages; (4) EMAS did not direct or control the work of Carrigan; (5) EMAS had no authority to discharge Carrigan from employment with his employer; (6) EMAS had no role in approving Carrigan's time sheets submitted to his employer; and, finally, (7) EMAS did not direct, control, or supervise the work performed by Carrigan. Accordingly, it is undisputed that

---

[1] Notably, although Carrigan claimed in his Petitions that Gallatin was his Jones Act employer, he appears to have dropped this claim in his Motion for Remand, and only references EMAS. However, in an abundance of caution, EPL will address claims of employment related to both EMAS and Gallatin.

[2] Unsworn Declaration of Brett Swinden, EMAS Human Resources Senior Manager, attached hereto as Exhibit "A"; Unsworn Declaration of William Safford, President of Gallatin, attached hereto as Exhibit "B".

4159440_1.DOCX

EMAS is not and was not Carrigan's employer and Carrigan cannot establish that EMAS was ever his borrowed employer.

Likewise, the Unsworn Declaration of the President of Gallatin, William Safford, attached as Exhibit "B", establishes that Carrigan is not and has never been employed by Gallatin and further that Gallatin is not and was not Carrigan's borrowing employer as (1) Gallatin did not have the authority to control or assign Carrigan to different projects; (2) Gallatin did not dictate Carrigan's work assignments and/or schedule; (3) Gallatin did not pay Carrigan's wages; (4) Gallatin did not direct or control the work of Carrigan; (5) Gallatin had no authority to discharge Carrigan from employment with his employer; (6) Gallatin had no role in approving Carrigan's time sheets submitted to his employer; and, finally, (7) Gallatin did not direct, control, or supervise the work performed by Carrigan. Accordingly, it is undisputed that Gallatin is not and was not Carrigan's employer and Carrigan cannot establish that Gallatin was ever his borrowed employer.

In actuality, despite Carrigan's unsubstantiated claims that EMAS and/or Gallatin were/are his employer(s) in his Petitions and his Motion to Remand, documents obtained through written discovery while this case was pending in state court, including a W-2 and paycheck stubs for Carrigan, establish that Carrigan was actually apparently employed by Aker Solutions, Inc. and/or Aker Subsea, Inc (collectively referred to as "Aker").[3] Further, EMAS, in responses to written discovery requests from Carrigan sent prior to removal of this case and thus prior to Carrigan's Motion to Remand, expressly denies that EMAS is Carrigan's employer and denies that it was in any way responsible for supervising Plaintiff.[4] Although not actually asserted by

---

[3] 2012 W-2 issued from Aker Subsea, Inc. attached hereto as Exhibit "C"; Paycheck stubs for Carrigan attached hereto as Exhibit "D".

[4] See EMAS's responses to Interrogatories propounded by Carrigan, specifically responses to requests two (2), four (4), seven (7), eight (8), ten (10), eleven (11), fourteen (14), fifteen (15), sixteen (16), eighteen (18), nineteen (19),

4159440_1.DOCX

Plaintiff's Petition, Cross has likewise denied in written discovery that it was Plaintiff's employer.[5]

Despite the foregoing, Carrigan continues in his Motion to Remand to assert that EMAS is his Jones Act employer, arguing that EMAS and Aker are actually related corporate entities and therefore EMAS must be Carrigan's employer, citing as alleged support for this statement several website links. In fact, however, as established by the attached Unsworn Declaration of EMAS's Legal Counsel Julie Alexander attached hereto as Exhibit "G,"

EMAS and Aker are not related corporate entities as alleged by Carrigan and were not related corporate entities at any time relevant to Carrigan's claims. Carrigan claims in this lawsuit that he was injured on April 23, 2013 while working as a subsea electrician on the Vessel. EMAS and Aker Solutions Inc. are not affiliated companies and were not affiliated corporate entities on or about April 23, 2013, because EMAS is not directly, or indirectly through one or more intermediaries, controlled, controlled by, or under common control with Aker Solutions, Inc. Likewise, EMAS and Aker Subsea Inc are not affiliated companies and were not affiliated corporate entities on or about April 23, 2013, because EMAS is not directly, or indirectly through one or more intermediaries, controlled, controlled by, or under common control with Aker Subsea Inc.

In 2011, Ezra Holdings Limited (a publicly traded Singapore company, which operates under the brand name "EMAS" among others) purchased Aker Marine Contractors AS and Aker Marine Contractors US Inc. Several months after the sale to Ezra Holdings Limited of Aker

---

twenty (20, twenty-one (21), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), and twenty-seven (27); attached hereto as Exhibit "E"

[5] See Cross' responses to Interrogatories propounded by Carrigan, specifically responses to requests two (2), four (4), seven (7), eight (8), ten (10), eleven (11), fifteen (15), sixteen (16), seventeen (17), eighteen (18), nineteen (19), twenty (20, twenty-one (21), twenty-two (22), twenty-three (23), twenty-four (24), twenty-five (25), twenty-six (26), and twenty-seven (27); attached hereto as Exhibit "F".

5

Marine Contractors AS and Aker Marine Contractors US Inc., the names of these entities were changed to reflect the new ownership: Aker Marine Contractors AS became EMAS-AMC AS, and Aker Marine Contractors US Inc. became EMAS-AMC Inc.

There is no continuing relationship between EMAS and Aker and the two are not related entities and were not related entities at the time of Carrigan's claimed employment and accident. Thus, despite the bold assertions by Carrigan, the evidence in this case establishes that Carrigan has not named in this lawsuit his Jones Act employer.

## IV.    LAW AND ARGUMENT

EPL's removal of this action is proper because Carrigan's claims under the general maritime law are removable pursuant to the recent amendments to the removal statute at 28 U.S.C. § 1441 and because Carrigan has not properly asserted any Jones Act claims because Carrigan has not sued his employer in this lawsuit.

## A. CARRIGAN'S CLAIMS UNDER THE GENERAL MARITIME LAW ARE REMOVABLE

As an initial matter, EPL notes that it is undisputed that Carrigan has asserted claims under the general maritime law. First, Carrigan's various Petitions allege claims of general maritime law negligence against Defendants. Additionally, although Carrigan never effected service on the M/V AMBASSADOR and, therefore that vessel is not a proper defendant, Carrigan's Petitions did include claims against the M/V AMBASSADOR. Carrigan has not at any time disputed that these claims are asserted under the general maritime law. Rather, Carrigan argues that this Court was incorrect in its recent decisions holding that general maritime law claims are removable pursuant to a 2011 amendment to the removal statute at 28 U.S.C. § 1441.

For the following reasons, EPL submits that this Court's analyses addressing the removal of general maritime law claims in the recent cases *Ryan v. Hercules Offshore, Inc.*, 2013 WL

6

1967315 (S.D. Tex. Houston Div. 2013) and *Wells v. Abe's Boat Rentals Inc.*, 2013 WL 3110322

(S.D. Tex. Houston Div. 2013) correctly found that the 2011 amendment to § 1441 eliminated

the previous bar to removal of general maritime law claims.

### (1) The 2011 Amendment to the Removal Statute Made Claims Under the General Maritime Law Removable.

In 2011, Congress amended the removal statute located at 28 U.S.C. § 1441. Prior to the

2011 amendment, § 1441 stated as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Prior to the 2011 amendment, Subsection (b) of § 1441 was consistently held to be a bar to the

removal of claims under the general maritime law as it was interpreted as an "Act of Congress"

that prohibited removal because maritime claims do not arise under the Constitution, treaties, or

laws of the United States. *See Ryan*, 2013 WL 1967315, *3.

Section 1441 was amended in 2011. The current removal statute, as amended, provides in

pertinent part:

(a) Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

7

(b) Removal based on diversity of citizenship.—

> (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.

> (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441.

The plain language of the amended removal statute clearly establishes that general maritime law claims are removable. *See* 28 U.S.C. § 1441. The federal district courts have original jurisdiction over general maritime law claims pursuant to 28 U.S.C. § 1333, which provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Under § 1441(a), claims of which the federal district court have original jurisdiction can be removed unless an Act of Congress expressly provides otherwise.

Amended subsection (b) now only applies to removal based on diversity of citizenship. 28 U.S.C. § 1441(b). Therefore, § 1441 no longer contains a requirement that all actions other than those based on the Constitution, treaties, or laws of the United States be supported by diversity of citizenship of the parties to be removed. Therefore, subsection (b) is no longer an Act of Congress that prohibits removal of general maritime law claims. Additionally, there is no other Act of Congress that expressly prohibits removal of general maritime law claims.

**(2) The Saving to Suitors Clause is Not an Act of Congress that Prohibits Removal of General Maritime Law Claims.**

8

Following the 2011 amendment to the removal statute, this Court in *Ryan* conducted an in-depth analysis of the effect of the amendment on the removal of general maritime law claims. The Court began its analysis with a discussion of "the major cases that courts in the Fifth Circuit have relied on when determining whether removal of maritime cases is appropriate when the parties lack diversity." *Ryan*, 2013 WL 1967315 at \*2. The Court considered *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959); *In re Dutile*, 935 F.2d 61 (5th Cir. 1991); *Tenn. Gas Pipeline*, 87 F.3d 150 (5th Cir. 1996); and *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208 (5th Cir. 2013). The cases analyzed by this Court in *Ryan* are some of the same cases relied upon by Carrigan in his Motion for Remand [Doc. No. 8]. After reviewing these cases, this Courtcame to the following conclusions:

> These cases make relatively clear that (1) federal courts have original jurisdiction over admiralty claims; (2) **the saving to suitors clause does not preclude federal courts from exercising jurisdiction over admiralty claims originally brought in state court**; (3) the old version of section 1441(b) was relied upon as the "Act of Congress" that precluded federal courts from exercising removal jurisdiction unless the requirements of section 1441(b) were met; and (4) admiralty cases do not arise under the Constitution, treaties or laws of the United States, so admiralty cases were considered "any other such actions" under the prior version of section 1441(b) and were thus removable only if none of the parties in interest properly joined and served as defendants was a citizen of the State in which the action was brought. When Congress amended section 1441, it left the reference in section 1441(a) to cases in which courts have "original" jurisdiction being removable unless prohibited by an Act of Congress. However, it deleted the text in section 1441(b) upon which courts in the Fifth Circuit relied as being an "Act of Congress" that precluded removal of cases that did not meet the other requirements of section 1441(b).

*Ryan*, 2013 WL 1967315, at \*4.

### a. The *Ryan* Court considered whether the saving to suitors clause prohibits removal.

Carrigan alleges in his Motion to Remand that this Court in *Ryan* did not consider whether the saving to suitors clause is an Act of Congress that prohibits removal of general

9

maritime law claims. However, it is clear from this Court's language above that it did analyze the saving to suitors clause and found that the courts in the U.S. Fifth Circuit considered former §1441(b), and not the saving to suitors clause, to be the Act of Congress that prevented removal of general maritime law claims.

In *Ryan*, the Court did recognize that the plaintiff had not suggested that some Act of Congress other than former § 1441(b) prohibited removal. However, it is clear from the Court's language above that it did consider the saving to suitors clause and found that, pursuant to the cases analyzed, the saving to suitors clause is not an Act of Congress that prohibits removal. Thus, Carrigan's claim that this Court did not consider the saving to suitors clause in *Ryan* as a possible bar to removal is incorrect.

Carrigan further claims in his Motion to Remand that this Court in *Ryan* did not consider what he calls the "absurd result" that Carrigan alleges would result from EPL's removal of Carrigan's claims—namely nullification of the saving to suitors clause. But, the *Ryan* Court clearly did consider the implications of removal of maritime actions and, in particular, the effect of the saving to suitors clause on removal. This Court stated "[h]ere, given the indication in prior caselaw that the saving to suitors clause doe[s] not guarantee a nonfederal forum, an amendment allowing removal is **not absurd**." *Ryan*, 2013 WL 1967315, at *5 (emphasis added).

This Court in *Ryan* further referenced the saving to suitors clause when it quoted 28 U.S.C. § 1333(1) and noted that this creates in the federal district courts "'original jurisdiction' over 'any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.'"

Accordingly, despite Carrigan's contentions to the contrary, this Court in *Ryan* did examine the saving to suitors clause and its effect on removability of admiralty claims as well as

the existing jurisprudence, including Carrigan's oft cited *Romero*, and this Court found, correctly, that the saving to suitors clause does not prevent removal of maritime claims.

### b.   This Court's ruling in *Ryan* is not an outlier as Carrigan claims, rather, it has been relied upon by multiple cases since its issuance.

Carrigan refers to the *Ryan* Court's ruling as an "outlier;" but, Carrigan fails to note that the *Ryan* analysis was followed by this Court in *Wells*, and has also been followed by the U.S. District Court for the Middle District of Louisiana. *See Bridges v. Phillips 66 Co.*, 2013 WL 6092803 (M.D. La. 2013).

### c.   The saving to suitors clause does not guarantee plaintiffs the right to a nonfederal forum.

This Court's rulings in *Ryan* and *Wells* are correct because the U.S. Fifth Circuit has clearly established that the saving to suitors clause does <u>not</u> guarantee plaintiffs a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty.

The U.S. Fifth Circuit in *Barker* stated that "[a]s a primary matter, this court emphasized that the 'saving to suitors' clause under general maritime law 'does not guarantee plaintiffs a nonfederal *forum*, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty." *Barker*, 713 F.3d at 220 (quoting *Tenn. Gas*, 87 F.3d at 153) (emphasis in original)). Additionally, in *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063 (5th Cir. 1981) the U.S. Fifth Circuit stated that "[t]he 'saving to suitors' clause does no more than preserve the right of maritime suitors to pursue nonmaritime remedies. It does not guarantee them a nonfederal forum, or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other

11

than admiralty." *Id.* at 1066. *See also Morris v. T E Marine Corp*, 344 F.3d 439, 444 (5th Cir. 2003).

### d. *Barker* did not consider or rule on the effect of amended § 1441 on removal of general maritime law claims.

Carrigan claims in his Motion to Remand that the U.S. Fifth Circuit's decision in *Barker* mandates a ruling by this Court that admiralty cases like Carrigan's case are not removable. Carrigan points to the fact that *Barker* was decided just months before this Court's decision in *Ryan*. However, as is clearly stated in the Fifth Circuit's opinion in *Barker*, as well as this Court's decision in *Ryan*, the previous version of the removal statute was in effect at the time *Barker* was removed. *Ryan*, 2013 WL 1967315, at *4; *Barker*, 713 F.3d at 212 n. 2. Thus, the Fifth Circuit in *Barker* was considering not the amended 2011 removal statute at issue in the instant case, but rather the pre-2011 removal statute, which is not relevant to the issue currently before this Court and is not precedent for this Court's decision as claimed by Carrigan. *Barker*, 713 F.3d at 212 n. 2.

Additionally, the language from *Barker* quoted by Carrigan in his Motion to Remand is dicta in a case that was removed based on the Outer Continental Shelf Lands Act. *Id.* at 218-19. The *Barker* court did not decide whether maritime law applied to the suit or whether general maritime law claims are removable pursuant to the amended removal statute. *Id.* at 218.

### e. Section 1441 requires an Act of Congress prohibiting removal to be express and the plain language of the saving to suitors clause does not expressly prohibit removal.

Amended § 1441 provides that cases of which the federal district courts have original jurisdiction are removable unless "otherwise **expressly** provided by Act of Congress." 28 U.S.C. § 1441(a) (emphasis added). The saving to suitors clause in no way expressly prohibits removal of general maritime law claims. Statutes that intend to prohibit removal state this intention

12

expressly. For example, the Federal Employer's Liability Act expressly prohibits removal by stating that "[a] civil action in any State court against a railroad or its receivers or trustees arising under [specifically enumerated statutory provisions], **may not be removed to any district court of the United States**. 28 U.S.C. § 1445(a) (emphasis added).

The saving to suitors clause contains no such language evidencing an express intent to prohibit removal. Instead, the saving to suitors clause saves to suitors "all other remedies to which they are otherwise entitled." 28 U.S.C. 1333(1). This language preserves only plaintiffs' rights to common law remedies but, as noted above, does not guarantee plaintiffs the right to a nonfederal forum and does not prohibit removal.

### f. Carrigan's Right to a Jury Trial Need Not be Abrogated by Removal.

Carrigan claims in his Motion to Remand that allowing removal of general maritime law claims would destroy a maritime plaintiff's right to a jury trial, which is not accurate. Although the saving to suitors clause does not guarantee a plaintiff the right to proceed in a nonfederal forum, it does preserve a plaintiff's rights to common law *remedies*. Therefore, where a plaintiff has timely asserted his right to common law remedies, such as a jury trial if same is available, those remedies should be preserved upon removal.

This is consistent with the U.S. Supreme Court's pronouncement in *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963) that "[w]hile this Court has held that the Seventh Amendment does not require jury trials in admiralty cases, neither that Amendment nor any other provision of the Constitution forbids them. Nor does any statute of Congress or Rule of Procedure, Civil or Admiralty, forbid jury trials in maritime cases." *See also Luera v. M/V Alberta*, 635 F.3d 181 (5th Cir. 2011). As noted by these cases, jury trials are available in admiralty cases in federal district courts when there is some independent basis for the jury trial. Therefore, if Carrigan

13

contends that the right to a jury trial is preserved by the saving to suitors clause, this right is not in conflict with removal and should be preserved at the federal district court level.

## B. CARRIGAN HAS NOT PROPERLY ASSERTED JONES ACT CLAIMS.

Carrigan alleges that he has brought claims under the Jones Act. However, it is well-settled that an employee may only assert Jones Act claims against his employer. "By the express terms of the Jones Act an employer-employee relationship is essential to recovery." *Guidry v. S. La. Contractors, Inc.*, 614 F.2d 447, 452 (5th Cir. 1980) (quoting *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 224 (5th Cir. 1975) clarified on other grounds); *see also Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790-91 (1949); *Addison v. Gulf Coast Contracting Servs., Inc.*, 744 F.2d 494, 498 (5th Cir. 1984) ("[A]n employer-employee relationship is a necessary element of a true Jones Act claim.").

Carrigan states in his Motion for Remand [Doc. No. 8] that "[f]actually, EMAS is Mr. Carrigan's employer . . ." Yet Carrigan cites no facts or evidence to support this bare assertion. Essentially, Carrigan asks this Court to find that he has asserted Jones Act claims without requiring Carrigan to present any facts or evidence to establish this. This would allow any plaintiff to prevent removal of claims simply by alleging that they are Jones Act claims without pointing to a shred of evidence establishing that this is actually the case. Further, Carrigan has not alleged that EMAS or Gallatin is his borrowed employer nor has he pointed to any facts to support such an allegation.

In order to establish a borrowed-employer/employee relationship, Carrigan would need to satisfy the borrowed employer test set out by the U.S. Fifth Circuit in *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969), which asks: (1) Who has control over the employee? (2) Whose work is being performed? (3) Was there an agreement, understanding, or meeting of the minds between

14

the original and the borrowing employer? (4) Did the employee acquiesce to the new work situation? (5) Did the original employer terminate its relationship with the employee? (6) Who furnished the tools and location for the employee's work? (7) Was the new employment to cover a considerable length of time? (8) Who had the right to discharge the employee? and (9) Who had the obligation to pay the employee? *Id.* at 313. The first factor, i.e. the question of who has control over the employee and the work, has been considered of central importance in U.S. Fifth Circuit cases. *See Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244-45 (5th Cir. 1988). As explained further below, Carrigan does not satisfy the test to be considered a borrowed Jones Act employee of either EMAS or Gallatin.

### (1) **EMAS Is Not and Was Not Carrigan's Employer.**

The attached testimony via unsworn declaration establishes that Carrigan is not now and was not at any relevant time an employee of EMAS. Specifically, the Unsworn Declaration of EMAS' Human Resources Senior Manager Brett Swinden, attached as Exhibit "A", establishes that Carrigan is not and has never been employed by EMAS and further that EMAS is not and was not Carrigan's borrowed employer as (1) EMAS did not have the authority to control or assign Carrigan to different projects; (2) EMAS did not dictate Carrigan's work assignments and/or schedule; (3) EMAS did not pay Carrigan's wages; (4) EMAS did not direct or control the work of Carrigan; (5) EMAS had no authority to discharge Carrigan from employment with his employer; (6) EMAS had no role in approving Carrigan's time sheets submitted to his employer; and, finally, (7) EMAS did not direct, control, or supervise the work performed by Carrigan. Accordingly, it is undisputed that EMAS is not and was not Carrigan's employer and Carrigan cannot establish that EMAS was ever his borrowed employer.

15

**(2) Gallatin Is Not and Was Not Carrigan's Employer.**

Likewise, the attached testimony via unsworn declaration establishes that Carrigan is not now and was not at any relevant time an employee of Gallatin. Specifically, the Unsworn Declaration of Unsworn Declaration of the President of Gallatin, William Safford, attached as Exhibit "B", establishes that Carrigan is not and has never been employed by Gallatin and further that Gallatin is not and was not Carrigan's borrowed employer as (1) Gallatin did not have the authority to control or assign Carrigan to different projects; (2) Gallatin did not dictate Carrigan's work assignments and/or schedule; (3) Gallatin did not pay Carrigan's wages; (4) Gallatin did not direct or control the work of Carrigan; (5) Gallatin had no authority to discharge Carrigan from employment with his employer; (6) Gallatin had no role in approving Carrigan's time sheets submitted to his employer; and, finally, (7) Gallatin did not direct, control, or supervise the work performed by Carrigan. Similarly to EMAS, Gallatin is not and was not Carrigan's employer and Carrigan cannot establish that Gallatin was ever his borrowed employer.

**(3) EMAS and Aker Are Not Related Entities**

Despite the evidence to the contrary, Carrigan, in his Motion for Remand [Doc. No. 8], states that "EMAS and Aker Solutions are related entities," citing to website links, in an attempt to establish that he did name his Jones Act employer in this lawsuit when he named EMAS and not Aker. This is factually incorrect. As established by the attached Unsworn Declaration of EMAS's Legal Counsel Julie Alexander, attached hereto as Exhibit "G," EMAS and Aker are not related corporate entities as alleged by Carrigan and were not related corporate entities at any time relevant to Carrigan's claims. Carrigan claims in this lawsuit that he was injured on April 23, 2013 while working as a subsea electrician on the Vessel. EMAS and Aker are not related

16

corporate entities as alleged by Carrigan and were not related corporate entities at any time relevant to Carrigan's claims. Carrigan claims in this lawsuit that he was injured on April 23, 2013 while working as a subsea electrician on the Vessel. EMAS and Aker Solutions Inc. are not affiliated companies and were not affiliated corporate entities on or about April 23, 2013, because EMAS is not directly, or indirectly through one or more intermediaries, controlled, controlled by, or under common control with Aker Solutions, Inc. Likewise, EMAS and Aker Subsea Inc are not affiliated companies and were not affiliated corporate entities on or about April 23, 2013, because EMAS is not directly, or indirectly through one or more intermediaries, controlled, controlled by, or under common control with Aker Subsea Inc.

In 2011, Ezra Holdings Limited (a publicly traded Singapore company, which operates under the brand name "EMAS" among others) purchased Aker Marine Contractors AS and Aker Marine Contractors US Inc. Several months after the sale to Ezra Holdings Limited of Aker Marine Contractors AS and Aker Marine Contractors US Inc., the names of these entities were changed to reflect the new ownership: Aker Marine Contractors AS became EMAS-AMC AS, and Aker Marine Contractors US Inc. became EMAS-AMC Inc.

There is no continuing relationship between EMAS and Aker and the two are not related entities and were not related entities at the time of Carrigan's claimed employment and accident. Thus, despite the bold assertions by Carrigan, the evidence in this case establishes that Carrigan has not named in this lawsuit his Jones Act employer.

### (4) The Fact that EMAS and/or Gallatin Could be Jones Act Employers of Their Own Employees Does Not Mean Either is Carrigan's Jones Act Employer.

Carrigan is correct that EPL does not contend that EMAS cannot be a Jones Act employer of personnel at the jobsite at issue. Indeed, EMAS *could* be *a* Jones Act employer, but only for EMAS's actual employees. The fact that it is possible for EMAS to be *a* Jones Act

17

employer does <u>not</u> mean that EMAS is Carrigan's Jones Act employer. Additionally, Carrigan has not "merely misidentified a defendant" as he suggests in his Motion to Remand. Rather, Carrigan has entirely failed to assert Jones Act claims by failing to join his employer as a defendant in this action.

### (5) **Discovery Responses Establish That Carrigan is Employed by Aker.**

In response to discovery requests, Carrigan has produced a W-2 issued to him from Aker Subsea Inc. for 2012.[6] Additionally, Carrigan has produced paycheck stubs, some of which list Aker Solutions, Inc. as the employer and some of which list Aker Subsea, Inc. as the employer.[7] None of Carrigan's paycheck stubs come from EMAS or Gallatin.

Based on all the foregoing facts, it is clear that none of the named Defendants to this action are Carrigan's employer. Because Jones Act claims can only be brought against a plaintiff's employer, Carrigan has not asserted Jones Act claims in this lawsuit.

### V.    **CONCLUSION**

This case was properly removed by EPL because claims asserted under the general maritime law are removable based on a 2011 amendment to 28 U.S.C. § 1441 and because Carrigan did not and cannot assert Jones Act claims against any of the named Defendants because none of the Defendants are Carrigan's employer.

**WHEREFORE**, EPL Oil & Gas, Inc. and Cross Group, Inc. pray that this Court deny Plaintiff Michael Carrigan's Motion for Remand [Doc. No. 8].

---

[6] Attached hereto as Exhibit C.
[7] Attached hereto as Exhibit D.

4159440_1.DOCX

Respectfully submitted,
**KEAN MILLER, LLP**

/s/ Zoe W. Vermeulen
**JAMES SILVERSTEIN (Texas Bar # 18357650)**
**KAREN W. SHIPMAN (Admitted Pro Hac Vice –**
**La. Bar # 27320)**
**ZOE W. VERMEULEN (Admitted Pro Hac Vice –**
**La. Bar # 34804)**
 909 Poydras Street, Suite 3600
New Orleans, Louisiana  70112
Telephone:  504.585.3050
Facsimile :  504.585.3051
**Attorneys for Defendant, EPL Oil & Gas, Inc.**

-and-

/s/Michael Hogue
**CRAIN CUBBAGE HEALY & WILSON, PLLC**
**MICHAEL HOGUE (Texas Bar # 09809800)**
**SUSAN NOE WILSON (Texas Bar # 15055025)**
1177 West Loop South, Suite 1300
Houston, TX 77027
Telephone: (713) 375-2450
Facsimile: (713) 375-2499
MHogue@craincubbagehealy.com
**Counsel for Cross Group, Inc.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been served

upon all known counsel of record in accordance with the Federal Rules of Civil Procedure, via

this Court's CM/ECF filing system, electronic mail, facsimile, and/or U. S. Mail properly

addressed and postage prepaid, on this 5th day of December, 2013.

/s/ Zoe W. Vermeulen
ZOE W. VERMEULEN

19